# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6822 | **DATE** | 6/5/2000 |
| **CASE TITLE** | THE DAVIS COMPANIES INC., et al vs. EMERALD CASINO, INC., et al | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's emergency motion for entry of a protective order quashing the subpoena for deposition of Wayne W. Whelan [68-1] is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN - 6 2000 date docketed | 72 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | IS docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CG courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

The Davis Companies Inc.,
et al.,
    Plaintiffs,

No. 99 C 6822

Emerald Casino, Inc,
et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Defendants Emerald Casino, Inc., HP, Inc., Joseph McQuaid, Kevin Flynn and Donald Flynn and subpoena respondent, Walter Hanley move for entry of a protective order quashing the plaintiff's subpoena for deposition of Walter Hanley, HP's general counsel and for reasonable attorney's fees incurred in pursuit of the motion pursuant to Rule 37 of the Federal Rules of Civil Procedure. The moving parties indicate that Mr. Hanley has been attending depositions as counsel for HP and has actively participated in and assisted with the legal defense of all defendants. He is, however, not counsel of record. It appears that the deposition subpoena was served on May 24, 2000, just seven days before discovery cutoff and the deposition of Mr. Hanley was scheduled for May 31, 2000 -- the same day which, pursuant to a prior agreement of the parties, the deposition of Michael Colleran, plaintiff's most important witness, has been scheduled to commence.

1



Defendants argue that this eleventh hour attempt to depose Hanley comes too late, would be overly burdensome, oppressive and prejudicial to defendants. In addition they submit that Mr. Hanley has no personal knowledge of any relevant facts in this case and that, in any case, service of the subpoena was improperly performed. Further, defendants argue that deposing an opponent's attorney is a drastic measure and should be permitted only in rare cases with a party seeking the deposition has shown that (1) the information sought is relevant to major issue in the case; (2) no other means for obtaining the relevant information exists; (3) the need for the information outweighs the inherent risk of deposing opposing counsel; and (4) the information sought is not privileged.

Defendants also point out that the subpoena in this case was not served upon Mr. Hanley as required by Rule 45 (b) (1) of the Federal Rules of Civil Procedure, but instead was given to co-counsel, Mr. Rotunno, who is not authorized to accept service of the subpoena on behalf of Mr. Hanley. In addition, at the time of the service witness and mileage fees were not properly tendered. Thus, service of the subpoena was improper and the subpoena should be quashed.

Plaintiff responds by pointing out that the law with respect to the deposition of in-house counsel differs from that which applies when attempting to depose outside counsel hired to handle the actual litigation of the case. The deposition of in-house counsel with personal knowledge of underlying facts does not require the party seeking the deposition to establish the factors cited by defendants. On the contrary, in such a case defendant bears the burden of establishing good cause as with any other ordinary request for protective order which seeks to

block a deposition. Plaintiffs argue that as in-house counsel Mr. Hanley was involved in the underlying events which are the subject of the suit and may hold factual knowledge regarding the plaintiffs allegations. However it appears that the underlying factual knowledge that Mr. Hanley is believed to hold relates not so much to the specific underlying events regarding the formation of the alleged contract in this case,[1] but more with respect to generalized knowledge regarding the workings of the defendants, or as put in plaintiff's brief, "Mr. Hanley's involvement in the business affairs of HP". The examples cited by plaintiffs include Mr. Hanley's negotiations on behalf of defendant Donald Flynn in the acquisition of controlling interests in HP; the fact that Mr. Hanley is a member of the management of HP and has had discussions with investment bankers concerning the financing for the Casino development in the Village of Rosemnt; and the fact that defendant Kevin Flynn testified that he might have spoken to Mr. Hanley about participating in a new corporate entity if HP were to lose its gaming license. In addition, plaintiff argues that many, if not all, of the other witnesses who may testify to these situations have, in their depositions, testified to a lack of knowledge and slash more memory concerning the subject matters to which Mr. Hanley was a witness. Therefore, there are no practical alternative sources for the information they seek from Mr. Hanley.

Plaintiff also argues that any attorney client privilege can and should be asserted on a question by question basis during the deposition and not in the form of a motion to bar the entire testimony of the witness.

---

[1] The conversations regarding the formation of the alleged oral contract which plaintiff seeks to enforce.

In response to the objections regarding the manner of service plaintiff also points out that although it is true that the subpoena was served on Mr. Rotunno who was not authorized to accept service on behalf of Mr. Hanley, at the time of service Mr. Rotunno and Mr. Hanley were standing side by side. Furthermore, plaintiff claims that it mailed a witness fees check to Mr. Rotunno on May 26, two day's after serving the subpoena.

We find no basis under the facts of this particular case for barring altogether the deposition of Mr. Hanley. He is not trial consul in this case. He is not of record and has not conducted questioning of witnesses. He may very well, as defendants have suggested, have been present during much of the deposition testimony of several witnesses, but deposing him will not in any way interfere with or interrupt defendants' trial preparations. Furthermore, it is common for in-house counsel to be present at business meetings and various corporate events and to be looked upon for advice regarding business rather than legal issues from time to time. The us, Mr. Hanley could very well be a fact witness in this case. As we have pointed out above, plaintiff's recitation of examples of situations in which Mr. Hanley was involved and which are relevant to this case is not particularly convincing. Yet, what we consider today is merely whether or not to allow discovery. In that context we cannot say that there is no reasonable possibility that deposing Mr. Hanley will lead to admissible evidence at the trial of this case. We therefore reject defendants' request for a blanket protective order.

Defendant's other objection pertains to the manner of service. It is clear to us that this last-minute service of the subpoena was defective. The record, including the fact that plaintiff's

4

counsel mailed the witness fees check two days later to Mr. Rotunno, reflects that counsel intentionally served the subpoena on defendants' trial consul and not upon Mr. Hanley himself as the rule requires. In addition, witness fees were not tendered until two days later and there is no indication that mileage fees were ever tendered. It appears from the record that the determination to subpoena Mr. Hanley was hastily made at the last-minute as the subpoena was apparently partially filled out by hand. At any rate, the attempted service of the subpoena was ineffective under the rules. While technical defects in service of compulsory process may sometimes be overlooked because of difficult circumstances surrounding the attempted service or because of indications of an intent to avoid service, the record shows no such difficulties in this case. Indeed, the circumstances could not have been more conducive to a proper service of a subpoena. The service was being attempted on an officer of the court who was himself physically present at the time. There was no attempt to evade the service, nor would we expect any from an officer of this court. In addition, Mr. Hanley's whereabouts were known to all. He could easily have been served on any day at any time prior to the expiration of the discovery period. Yet counsel, who must have had prior knowledge that Mr. Hanley would indeed be present at the deposition, failed to make the proper preparations when he must have known that there was a good likelihood that the subpoena, being of any attorney who had an attorney-client relationship with the opposing party, would be strenuously objected to. The motion for a protective order quashing plaintiff's subpoena for the deposition of Walter Hanley is, therefore, granted.

We move now to the plaintiff's emergency motion seeking a protective order quashing the subpoena for deposition of Wayne W. Whelan. Plaintiffs assert that this subpoena "was done

5

in retaliation for plaintiff having subpoenaed Mr. Walter Hanley, the in-house general counsel of defendant HP, Inc...." The subpoena came one day after plaintiffs subpoenaed Mr. Hanley. Plaintiff points out that "It is utterly implausible to believe that Defendants independently realized some need to depose Mr. Whelan after completion of seven months of discovery the very day after Mr. Hanley was subpoenaed and shortly after requesting that plaintiff drop Mr. Hanley's deposition. Rather, defendants are engaging in tactical gamesmanship by transparently attempting to harass Mr. Whelan and thereby bully plaintiff into withdrawing the subpoena to Mr. Hanley." Mr. Whelan, according to plaintiff, could only testify with respect to communications he had with third party witnesses and the Illinois gaming board officials sometime after the present dispute arose. As such, it would duplicate the extensive third party discovery conducted to date.

Furthermore, Mr. Whelan, as opposing counsel -- rather than in-house counsel -- is protected from deposition absent the meeting of stringent standards. Indeed, taking the deposition of opposing counsel is considered a questionable undertaking. It has a tendency to disrupt the opponents trial preparations, and almost necessarily involves the need to resolve convoluted work product an attorney client objections. Thus it should be allowed only when the subject matter of the proposed deposition is material and important to the case and not available by some other less potentially disruptive means. This standard does not appear to have been met. It appears that the most that can be gained from deposing Mr. Whelan is the potential for discovering inconsistent statements from third party witnesses or, at best, Mr. Whelan's own clients. In addition, much of what Mr. Whelan will be questioned about occurred after the filing

of this lawsuit and thus implicates issues of work product. Finally, we see no reason why this facet of discovery could not have been initiated long ago rather than on the eve of discovery cutoff when it will likely entail an extension of discovery. Therefore, plaintiff's emergency motion for entry of a protective order quashing the subpoena for deposition of Wayne W. Whelan is granted.

SO ORDERED                              ENTERED: June 2, 2000

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge