

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6822 | **DATE** | 9/20/2000 |
| **CASE TITLE** | THE DAVIS COMPANIES, INC. vs. EMERALD CASINO, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion to dismiss pursuant to Fed.R.Civ.P.12(b)(7) is hereby granted (31-1). Defendants' motion to dismiss for failure to state a claim is hereby stricken as moot (30-1). This case is closed. All pending motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | SEP 2 2 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | 9/20/2000 | |
| | Copy to judge/magistrate judge. | 00 SEP 21 AM 8: 24 | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | CG mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE DAVIS COMPANIES INC., )
a California corporation, )
)
　　　　Plaintiff, ) No. 99 C 6822
)
) Judge Ronald A. Guzman
　　v. )
)
EMERALD CASINO, INC., formerly )
known as HP, Inc., an Illinois )
corporation; JOSEPH MCQUAID, )
individually and as agent of HP, Inc.; )
DONALD F. FLYNN, individually )
and as agent of HP, Inc., and KEVIN FLYNN, )
individually and as agent of HP, Inc. and of )
DONALD F. FLYNN, )
) SEP 22 2000
　　　　Defendants. )

## MEMORANDUM OPINION AND ORDER

Pending is Defendants Emerald Casino, Inc. formerly known as HP, Inc., Joseph McQuaid, Donald F. Flynn and Kevin Flynn's motion to dismiss Plaintiff The Davis Companies, Inc.'s complaint pursuant to Federal Rules of Civ. Proc. 12(b)(6) and 12(b)(7). For the reasons set forth below Defendants' motion to dismiss for failure to join an indispensable party is hereby granted (#31-1). Defendants motion to dismiss for failure to state a claim is stricken as moot (#30-1).

## BACKGROUND FACTS

For purposes of the motion we take the facts alleged in Plaintiff's First Amended

Complaint as true. Plaintiff The Davis Companies ("Davis") commenced this action on October 18, 1999, by filing a complaint alleging breach of an oral contract, pursuant to which Plaintiff was to acquire stock ownership in HP "equal" with that of HP's then-existing shareholders.[1] Plaintiff claims that as a consequence of the alleged breach of the purported oral agreement it has sustained more than $250 million in damages. The First Amended Complaint names as defendants Emerald Casino, Inc. formerly known as HP, Inc. and three individuals: Joseph McQuaid (alleged to have been an officer, director, and controlling shareholder of HP)("McQuaid"), Donald F. Flynn (alleged to have been an officer, director and controlling shareholder of HP)("Don Flynn"); and Kevin Flynn (the son of Don Flynn and the "duly authorized agent" of HP and Don Flynn)("Kevin Flynn").

On December 1, 1998, Davis entered into an oral contract with HP, the owner of an Illinois gaming license for the operation of Riverboat gambling in East Dubuque, Illinois. The oral contract was conditioned on the event that during the 1998 Veto Session or the 1999 Spring Session of the Illinois General Assembly, the Illinois Riverboat Gambling Act would be amended to permit HP's license to be used for a casino in Rosemont, Illinois. Under the terms of the oral contract, HP would issue sufficient shares to Davis to make Davis the owner of a 37.5% interest in HP. It was further agreed that Davis would make a $12 million capital contribution to HP upon issuance of the shares. Davis understood that HP would also issue sufficient shares to make Richard Duchossois ("Duchossois") owner of a 20% interest in HP and to make local investors collectively the owner of a 5% interest in HP, and that after the issuance

---

[1]On August 16, 1999 HP changed its corporate name to Emerald Casino, Inc.

of these shares and the shares to Davis, the interest of the existing shareholders as of December 1, 1998, would be diluted to a 37.5% interest in HP. The issuance of shares to Duchossois and to local investors was not a condition to the oral contract between the Davis Companies and HP.

Davis further understood that it may be necessary in the future for HP to issue some additional shares to third parties, and that the 37.5% interest in HP of each of the Davis Companies and the Existing Shareholders, the 20% interest of Duchossois and the 5% interest of local investors, proportionately would be diluted. Davis further understood that HP intended to raise a total of $30 million in new capital to be distributed to HP's original investors who had lost their $30 million investment in HP's defunct riverboat operations.

The oral contract between Davis and HP was negotiated on behalf of Davis by Michael Colleran, its Executive Vice President ("Colleran"), and on behalf of HP by Kevin Flynn who had actual and apparent authority to act on behalf of HP. On December 1, 1998, Kevin Flynn and Donald Flynn, controlling and majority shareholders of HP having the power to control the Board of Directors of HP (collectively "the Flynns"), entered into a separate oral contract with Davis, whereby the Flynns promised to take any and all steps necessary to assure HP's performance of its contractual obligations to Davis. The separate oral contract between Davis and the Flynns were negotiated by Colleran on behalf of the Davis Companies and by Kevin Flynn for himself and on behalf of his father, Donald Flynn, as shareholders of HP who had the power to control the Board of Directors.

In May of 1999, the Illinois General Assembly amended the Illinois Riverboat Gambling Act, in part by adding Section 11.2. The amendment to the Act was signed into law on June 25, 1999 by Governor George Ryan. HP has asserted to the Illinois Gaming Board that under

section 11.2 the Board is required to renew HP's License and allow the relocation of the License to Rosemont based upon the Village of Rosemont's decision to approve the relocation of the License to Rosemont. Prior to the amendment of the Act, Kevin Flynn and Joseph McQuaid, an officer and director of HP, repeatedly acknowledged to third parties, including, among others, Duchossois and Eugene Reineke ("Reineke"), the existence of the oral contract between Davis and HP.

Since the Act was amended, however, the Defendants have denied the existence of any oral contracts with Davis. HP, Kevin Flynn and Donald Flynn now stand to gain millions of dollars annually, substantially as a result of the efforts of Davis and others, and are attempting to deny Davis its rightful share of the revenues from the Rosemont Casino. Plaintiff seeks specific performance or equitable enforcement of its oral contract with HP, or, alternatively, money damages for breach of contract in an amount not less than $250 million.

Further in the alternative, given denial of the oral contract by the defendants, Davis have been defrauded by the defendants' scheme of knowingly making false and fraudulent representations that were intended to and did cause Davis to believe that if legislation were passed that would allow the use of HP's license in Rosemont, Davis would become the owner of a 37.5% interest in HP.

On May 24, 1999, the Illinois State Senate voted, and deadlocked 29-29, on a proposed amendment to the Act to allow HP to transfer the license to Rosemont. The next day, May 25, 1999, the Illinois State Senate passed Senate Bill 1017 by a vote of 31-27, which purported to allow HP to transfer the license to Rosemont and, in addition, required that racial minorities have a 16%, and females have a 4% ownership interest in the license.

Count I seeks specific performance of the purported oral contract, or, in the alternative, damages in an amount not less than $250 million. Davis has alleged in Count II that defendants Kevin Flynn and Donald Flynn breached their promise to exercise their power and authority as majority and controlling HP shareholders to cause HP to fulfill its stock-for-cash obligations to Davis. Davis has alleged that this power includes the power to terminate the directorships of existing HP board members and to elect new members amenable to ratifying the oral agreement between Davis and HP. In consideration for this promise from the Flynns, Davis agreed to proceed without a formal board resolution or a written contract. Davis agreed to do so because of the Flynns' assurance that they would exercise their power and authority to see that HP honored and fulfilled the stock-for-cash transaction. Count II also seeks specific performance or damages for the Flynns' alleged breach of the second, "separate" oral contract by failing to cause HP to issue the shares to which Davis claims to be entitled.

Count III sets forth a claim for equitable estoppel against HP. Davis requests that the Court equitably estop HP from repudiating the representations of its alleged agents and order HP to "specifically perform in conformity with the terms of the oral contract." Count IV sets forth a claim for misrepresentation and fraud against all defendants. In Count V, Davis alleges that the individual defendants Kevin Flynn, Donald Flynn and Joseph McQuaid engaged in "civil conspiracy" to perpetrate the purported fraud alleged in Count IV.

During the discovery phase of this case, on June 12, 2000 a memorandum was produced by Duchossois' attorney, David Filkin, dated December 2, 1998, as to which Duchossois and Filkin have asserted a claim of Attorney-Client privilege. The Court disagreed and the Filkin Memo was produced after Defendants filed a motion to compel its production.

The Filkin Memo summarizes a meeting between Duchossois, Filkin and Colleran in a hotel bar on December 1, 1998 regarding the riverboat proposal. The meeting took place only a few minutes after a meeting in the same hotel bar between Colleran and Kevin Flynn at which Davis claims Colleran and Kevin Flynn made the oral contracts as issue. The Filkin Memo reveals that Colleran, Filkin and Duchossois all considered Duchossois to be a party to whatever agreement they might reach. The Filkin Memo establishes that the following issues were either left ambiguous or were missing altogether from previously discovered notes of Filkin:

    a.    that Colleran, on behalf of Davis, represented to Duchossois that there was agreement on a "deal structure" involving ownership interests by Marvin Davis, the Flynn family and Duchossois;

    b.    that Colleran also represented that the type of entity contemplated by the alleged three-way agreement was an open issue yet to be resolved but that it would be a new entity and not HP, Inc;

    c.    that Colleran also represented that the Flynns somehow would cause HP to transfer its gaming license to the new entity, but that neither "the details" of this transfer nor the effect on other HP shareholders had yet to be resolved;

    d.    that Colleran also represented that the question of how an alleged $30 million in debt incurred by HP or the Flynns would be treated was something "to work out," but that it could affect the amount of Duchossois' prorata share of capital costs which he volunteered to pay; and

    e.    that it was undecided whether Duchossois would have voting rights in the new entity.

## DISCUSSION

Defendants move to dismiss Davis' complaint under Rule 12(b)(7) for failure to join an

"indispensable party" under Rule 19. According to defendants, Richard Duchossois is a necessary and indispensable party whose joinder would deprive this Court of jurisdiction, and in whose absence this case should not proceed. In particular, Defendants' argue absent Duchossois' joinder, complete relief cannot be accorded among the existing parties and proceeding in Duchossois' absence could prejudice either the named defendants or Duchossois himself.

In determining whether an action should be dismissed under Rule 19, the court's inquiry is not confined to the pleadings. *English v. Cowell*, 10 F. 3d 434, 437 (7th Cir. 1993) and *Capitol Leasing Co. v. F.D.I.C.*, 99 F. 2d 188, 191 (7th Cir. 1993)(court may consider matters outside the pleadings to resolve any factual questions relating to indispensable parties). Indeed, extrinsic evidence is essential to a court's determination of whether an unnamed party should be deemed indispensable. *Conopco, Inc. v. S.K. Foods*, No. 98 C 1882, 1999 WL 965554, at *7 (N.D. Ill. Sept 30. 1999).

In order to determine whether Duchossois is an indispensable party, we must perform a two-part inquiry under Fed. R. Civ. P. 19. We must first determine whether Duchossois is a necessary party under Fed. R. Civ. P. 19(a). If a person qualifies as a necessary party, the court shall order that the person be made a party. See Fed. R. Civ. P. 19(a). If, however, the court cannot join the party because to do so would destroy jurisdiction or the party is not subject to service of process, the court must proceed to examine the four criteria described in Rule 19(b) to determine whether the action should go forward in the party's absence or whether the action must be dismissed. See 7 *Wright, Miller, Kane, Federal Practice and Procedure:* Civil § 1604. This question is commonly analyzed as whether this necessary party is "indispensable." *Darush v. Northern Trust Company*, 1996 WL 99903, at *3 (N.D. Ill. Feb. 29, 1996)(citing *Pasco*

*International (London) Ltd. v. Stenograph Corp.*, 637 F. 2d 496, 501 n. 13 (7th Cir. 1980);

*Krueger v. Cartwright*, 996 F. 2d 928, 933 (7th Cir. 1993)).

Under Rule 19(a), joinder of a party is necessary if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If the person has not been so joined the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Fed. R. Civ. P. 19(a)

We conclude that Duchossois is a necessary party because he is an interested party in this action and in his absence complete relief cannot be accorded among those already parties. This case is so situated that the disposition of the action in Duchossois absence may as a practical matter impair or impede Duchossois' ability to protect that interest. Furthermore, Defendants could be at risk of incurring double or inconsistent obligations by reason of Duchossois' claimed interest. Davis cannot argue that the presence of the parties now before the Court is sufficient to protect the interests of Duchossois.

The dispute between Davis and the Flynns concerns the rights and obligations arising under an oral agreement to exercise the option of becoming the three primary shareholders in a close corporation or partnership which would operate the entertainment/gambling complex in Rosemont. Davis argues that its contract was a separate contract from that of Duchossois' but whether we are dealing with one contract between Defendants and Plaintiff, or two separate

8

contracts, one between the Defendants and Plaintiff and one between Defendants and Duchossois, the alleged options to exercise shareholder rights in the closely held corporation or partnership entity are tripartite in nature and interdependent in substance and operation.

For example, a cursory reading of the Amended Complaint demonstrates that a negative judgment against the Defendants could possibly affect Duchossois' interest as to his alleged 20% option. Even taking Davis' assertions as true, that there were two agreements not just one, the purportedly separate agreements have the same object: the purchase of stock in HP or a successor corporation either by Davis (allegedly 37.5%) or Duchossois (20%). Moreover, whether Duchossois' shares would have voting rights, an issue apparently not resolved would affect the voting power of both the Flynns and Davis. Likewise, the issue of a $30 million credit to the Flynn family for debt incurred as to HP would also affect Davis and Duchossois' potential capital obligations. Moreover, one of the primary issues in this case is whether there was a contract. In Count I Plaintiff demands relief in the form of specific performance as to the terms of the contracts he claims were breached because the gambling license is unique. The factual issues inherent in the resolution of Plaintiff's oral contract claim are very similar to the issues raised by any claim Duchossois might make. Indeed, proof that Duchossois was also engaged in an oral contract for a piece of H.P.'s multimillion dollar business and that the deals were interrelated, though not interdependent, would be strong circumstantial evidence in support of Plaintiff's oral contract claim. It would tend to establish intent and a meeting of the minds and tend to negate the defense that the parties were merely engaged in informal preliminary discussions. Here, it can only be concluded there are a community of interests arising out of the alleged triparte agreement or two agreements to exercise stock options, which are dependent in

9

substance and operation. The agreements both involve the alleged precise terms of the contract, including the type of entity, the purchase price to be paid to shareholders, the application of the proceeds, a reduction of the Flynn's capital commitment, a reallocation of the total development costs, voting rights, major decision rights, and other any rights arising under the formation of this contract to purchase shares in a closely held corporation or partnership. Obviously, the relief contemplated in this case will have a substantial impact on both Defendants and Duchossois.

For these reasons, we find that Duchossois is a necessary party under Fed. R. Civ. P. 19(a). Because joinder of Duchossois would destroy diversity jurisdiction, this Court's only basis for federal jurisdiction, the Court must consider the four factors set forth in Rule 19(b) to determine whether in "equity and good conscience" this case should be dismissed.

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person, or those already parties, second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

These four factors overlap to a large extent the considerations required under Rule19(a), but Rule 19(b) requires a pragmatic weighing of these four factors. *See Burger King Corp v. Amer. Nat'l Bank and Trust Co. of Chicago,* 119 F.R.D. 672, 679 (N.D. Ill. 1988). No single factor is necessarily determinative, nor is the list inclusive. *See Freeman v. Liu,* 112 F.R.D. 35,

10

40 (N.D. Ill. 1986). We begin by analyzing the first and most important factor in the indispensability analysis--the extent to which a judgment rendered in Duchossois' absence might result in prejudice to Duchossois.

[A] "contracting party is the paradigm of an indispensable party. *Hall v. Tribal Development Corp.,* 100 F. 3d 476, 479 (7th Cir. 1996)(quoting *Travelers Indem. Co. v. Household Int'l, Inc.,* 775 F. Supp. 518, 527 (D. Conn. 1991))(collecting authorities). The dispute between plaintiff Davis and Defendants concerns the rights and obligations arising under an alleged agreement to exercise stock options. A reading of Davis' complaint demonstrates that the interests of Duchossois could be significantly impacted by Davis' claims. If Davis prevails on his breach of contract claim and is granted specific performance he could become a major shareholder or partner in HP. By virtue of this 37.5% majority status Duchossois' alleged 20% option to purchase could be diminished or abrogated. Indeed, the very composition and nature of the business entity Duchossois would be buying into could be greatly affected, if not completely determined by this lawsuit for specific performance. The fact of Duchossois' participation in this proposed corporation or partnership is found throughout the depositions. (Colleran, pp. 204, 245, 382, Filkin, pp. 36, 192, 341, 342, Duchossois pp.142, 175, Reineke p.604, Shannon p.110).

Additionally, Defendants may suffer prejudice as a result of the failure to join Duchossois because Duchossois could bring a separate lawsuit against Defendants on many of the same claims presented here, thus subjecting Defendants to multiple and possibly inconsistent verdicts. The testimony of Duchossois supports the possibility of a such a lawsuit. Duchossois has testified in his deposition that he felt "wronged"--that he believed "there was a breach of trust,

11

breach of confidence, a breach of contract or a breach of a gentlemen's agreements." (Duchossois Dep. at 21-22). To be sure, Duchossois has testified that his agreement with HP was not to acquire a 20% interest in HP, but instead was a "gentlemen's agreement" for an option to acquire a 20% interest in HP in the event that HP's license was actually used in Rosemont, but the December 2, 1998 Memorandum prepared by Duchossois' attorney, David Filkin (the "Filken Memo") reveals that Colleran, Filkin and Duchossois all considered Duchossois to be a party to whatever agreement they might reach.

The second and third factors further supports a finding that Duchossois is indispensable. The Court could not easily fashion relief limited to Davis' alleged stock options without delving into any alleged contract between Defendants and Duchossois. Davis' alleged percentage cannot be calculated without some agreement among the proposed shareholders regarding Duchossois' percentage of ownership and dilution and/or reduced share ownership of others. If Duchossois were to seek his own relief, any relief ordered as to his claims he may as a practical matter prevent the full realization of any intended relief entered by this Court. Defendants, by introducing the testimony of Duchossois, have demonstrated that Duchossois could possibly claim an interest in the instant lawsuit or another lawsuit. Thus, judgment entered in the absence of Duchossois could be inadequate as it would partially address the contested rights and obligations of Defendants, Davis and Duchossois under the alleged agreements to exercise options.

Finally, in considering the fourth factor, the Court observes that there exists a convenient alternative forum: Illinois state court. However, this factor only slightly weighs in favor of finding Duchossois an indispensable party. This is because:

12

> Where the plaintiff can otherwise maintain a diversity action in the federal courts, the plaintiff has an interest in the forum granted by federal law and chosen by him. To outweigh the plaintiff's choice some additional interest of the absent person, the other parties or the judicial system must be found. *Freeman,* 112 F.R.D. at 40 *quoting Pasco Int'l Ltd. v. Stenograph Corp.,* 637 F. 2d 496, 501 (7th Cir. 1980).

This fourth factor works negatively, weighing heavily against dismissal if there exists no alternative forum but weighing only slightly for dismissal if another forum exists. *See Freeman* 1112 F.R.D. at 40. Here, Davis is free to pursue his claims against Defendants in Illinois.

Each of these factors militates in favor of dismissal of this action. The Seventh Circuit has held that "Rule 19 requires us to look beyond whether a non-party would technically be bound and to consider whether the judgment would 'as a practical matter' impair the non-party's interest." *Casualty Indemnity Exchange v. Village of Crete,* 731 F. 2d 457, 461 (7th Cir. 1984). Litigation of Davis' alleged contract claim regarding the ownership rights in HP or a successor corporation raises the spectra of both "technical" impairment and "practical" impairment of Duchossois' interests. It does not appear that this potential prejudice can be alleviated short of joining Duchossois because Duchossois' legal rights, if any, are inextricably intertwined with Davis' factual allegations against Defendants. Because Duchossois' joinder would destroy this court's diversity jurisdiction under 28 U.S.C. § 1332, we shall dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7). Accordingly, we find it unnecessary to reach defendants' failure to state a claim motion.

## CONCLUSION

For the reasons set forth above Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is hereby granted (#31-1). Defendants' motion to dismiss for failure to state a claim is

hereby stricken (#30-1).

**SO ORDERED:**　　　　　　　　　　　　　　ENTERED: 9/20/00

　　　　　　　　　　　　　　　　　　　　　　/s/ Ronald A. Guzman
　　　　　　　　　　　　　　　　　　　　　　Hon. Ronald A. Guzman
　　　　　　　　　　　　　　　　　　　　　　United States Judge